JOHN W. van ALLEN and A. THERESA van ALLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Allen v. Commissioner
Docket No. 17217-81.
United States Tax Court
T.C. Memo 1983-619; 1983 Tax Ct. Memo LEXIS 177; 46 T.C.M. (CCH) 1612; T.C.M. (RIA) 83619; September 28, 1983. John W. van Allen, pro se. Beatrice M. Pearson, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined deficiencies in petitioners' income tax of $6,551 and $3,534 for their 1977 and 1978 taxable years, respectively, and section 6653(a) [1] additions to tax of $328 and $177 for 1977 and 1978, respectively. The issues presented for our decision are: (1) whether activities carried on under the name "Sitzmark Shuttle System" in 1977 were engaged in for profit within the intendment of section 183; (2) whether activities carried on under the name "Sitzmark Productions" were engaged in *179 for profit within the intendment of section 183 during the years in issue; (3) whether petitioners are entitled to deduct in 1978 a casualty loss and a claimed "cash downpayment supplement"; (4) whether petitioners are entitled to a charitable contribution deduction for 1978 in excess of the amount (5) whether certain miscellaneous deductions claimed for 1977 and 1978 are allowable; and (6) whether petitioners are liable for the section 6653(a) addition to tax for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Santa Cruz, California, when their petition in this case was filed. Petitioner husband is hereinafter referred to as John. During the years in issue petitioners resided in North Lake Tahoe, California. Sometime around 1969, petitioners set out to establish a transportation system between the north end of Lake Tahoe, various resorts, and the Reno Airport. They *180 intended to use 15 passenger buses to this end. Although John's testimony was vague, evidently petitioners were unable to acquire the requisite licenses from the appropriate regulatory agencies. [2] Because of its failure to acquire licenses, Sitzmark Shuttle System never became operational. Following the demise of Sitzmark Shuttle System, John became involved in aerial movie making activities which he pursued under the name "Sitzmark Productions." [3]
Beginning in 1977 John filmed, both from the air and from the ground, the rehabilitation of the Nevada State Capital Building in Carson City, Nevada. *181 This filming was undertaken on his own initiative, and John had no arrangements for selling or marketing the finished film. John has not completed this project, nor attempted to market it, although he testified that the principal contractor in the capital rehabilitation is interested in acquiring the film. John failed to keep a record of expenses he incurred in filming the capital rehabilitation, other than to save sales receipts. Following the completion of the capital rehabilitation, John began filming, both from the air and at ground level, the restoration of the Santa Cruz boardwalk. In this project, John worked with Warran E. Littlefield (hereinafter Warren), the secretary of the boardwalk company. Warren shared his knowledge of the boardwalk with John and was evidently filmed while relating amusing anecdotes concerning the boardwalk. In exchange for these services, Warren was to receive film and a share of any financial proceeds from the film, evidently calculated by multiplying net receipts times a fraction the numerator of which was to be the amount of footage for which Warren was responsible and the denominator of which was to be total footage of the film. This arrangement *182 was never reduced to writing. During 1979, John took aerial film of a large fire over a period of three days. Parts of this film were used on a local news station. John estimated that he netted less than $100 from this transaction. At various times between 1977 and 1981, John began and partially completed films about Monarch butterflies, and about the migration of whales from Baja, California. John also filmed an unusual cloud formation, and testified that he believes the Weather Service will be interested in purchasing his footage of the formation. He was unable to estimate, however, the amount the Weather Service would pay. [4]
As a result of his various filming activities, John has accumulated over 30,000 feet of film, but he has yet to complete a film. During 1978 and thereafter, John was engaged in a dispute with Cessna Aircraft, from which he had purchased an aircraft *183 he considered defective. He attributes in part his inability to complete any of his films to problems with this aircraft. John had some experience with filmmaking while working for the Coast and Geodetic Survey in 1952. He has never had a formal course in cinematography. During 1977 and 1978 John made no effort to look for buyers for his films. He believed, however, that "[a]nything I turned out would be acceptable. If I would watch it, anyone would watch it." [5]
For their 1977 taxable year petitioners reported gross income of $37,983. They claimed a loss of $1,800 from Sitzmark Shuttle System, and a loss of $32,571 from Sitzmark Productions. [6] For their 1978 taxable year petitioners reported gross income of $33,527. They claimed a loss attributable to Sitzmark Productions of $19,709. On their Schedule C for Sitzmark Productions, petitioners reported no gross income and expenses of $31,133. No explanation is given why they claimed only $19,709 of *184 their reported $31,133 loss. OPINION Petitioners contend, and respondent denies, tha Sitzmark Shuttle System and Sitzmark Productions were operated with the objective of making a profit. Section 183(a) [7] provides that no deduction shall be allowed to an individual for expenses attributable to an activity not engaged in for profit except as provided in section 183(b). Section 183(b) provides that losses in excess of income are disallowed with respect to such an activity. Section 183(c) defines the phrase "activity not engaged in for profit" to mean any activity other than one with respect to which deductions are allowable under section 162 [8] or under paragraphs (1) or (2) of section 212. [9] Thus, only if deductions are allowable under sections 162 or 212(1) or (2) with respect to an activity is that activity engaged in for profit. *185 A prerequisite of deductibility under section 162 and paragraph (1) and (2) of section 212 is a predominant purpose and intention of making a profit from the activity with respect to which the expenses are incurred. Allen v. Commissioner,72 T.C. 28, 33 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. on another issue 615 F.2d 578 (2d Cir. 1980). The taxpayer's expectation of profit need not be a reasonable one, but the facts and circumstances must indicate that he had an actual and honest objective of making a profit. Section 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. 642, 645-646 (1982), affd. in an unpublished opinion (D.C. Cir. Feb. 22, 1983). Accordingly, in this case we must determine whether John had an actual and honest profit objective in conducting Sitzmark Shuttle System and Sitzmark Productions. Petitioners bear the burden of proof on these issues. Rule 142(a). While ultimately we are deciding subjective intent, that intent can be ascertained from objective factors which are entitled to greater weight than a taxpayer's statements. Section 1.183-2(a), Income Tax Regs. *186 ; Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. per order (9th Cir. 1981). Section 1.183-2(b), Income Tax Regs., sets forth some of the relevant factors, derived principally from prior case law, which are to be considered in determining whether an activity is engaged in for profit. They are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. These factors are not exclusive and are to be applied according to the unique facts of each case. Accordingly, no one factor, or a majority of nine factors, need be considered determinative. Golanty v. Commissioner,supra at 426-427; *187 Benz v. Commissioner,63 T.C. 375, 382-383 (1974). On the record before us, only one of the factors we deem relevant herein supports petitioners' contention that Sitzmark Shuttle System and Sitzmark Productions were operated with a profit motive: it does appear that John expended large amounts of time and effort in carrying out these activities. On the other side of the ledger, the record indicates that the activities of Sitzmark Shuttle System and Sitzmark Productions were carried out in a haphazard and unbusinesslike manner; [10] that John had little experience and less formal training in either the transportation industry or aerial cinematography; that John had no previous success in carrying on similar activities; that petitioners had an unblemished record of losses from their operation of Sitzmark Shuttle System and Sitzmark Productions; that petitioners earned at most negligible occasional profits from Sitzmark Shuttle System [11] and Sitzmark Productions; and the John evidently derived personal pleasure from at least his filming activities. Additionally, we note that John made no effort to market his films in progress or to ascertain whether any market would *188 exist should he ever complete a film. Instead, John proceeded to incur significant expenses for his filming activity solely on his belief that "[a]nything I turned out would be acceptable. If I would watch it, anyone would watch it." Finally, we note that petitioners failed to keep any books or businesslike records for either Sitzmark Shuttle System or Sitzmark Productions. John argues Sitzmark Productions would have been profitable had the aircraft he purchased from Cessna not been defective. We find this *189 argument implausible. If John had really believed significant profits were being lost, we believe he would have rented a replacement aircraft. Additionally, we find it hard to credit John's profit prognostications given that they are admittedly based on nothing more than his belief that if he would watch a movie, anyone would watch it. Based on the foregoing considerations, and the entire record, we find and hold that petitioners have failed to meet their burden of proving that Sitzmark Shuttle System and Sitzmark Productions were activities engaged in for profit within the intendment of section 183. Accordingly, respondent's determination on this issue will be upheld. Petitioners failed to present any evidence or to argue on brief concerning the remaining issues of this case, including respondent's determination that they were liable to additions to tax pursuant to section 6653(a). Petitioners bear the burden of proof with respect to all these issues. Rule 142(a). Since petitioners made no argument at trial or on brief concerning these issues, we assume they have been conceded; in any event, petitioners have failed to meet their burden of proof. Respondent's determination *190 on each of these issues must therefore be upheld. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. John did not explain clearly petitioners' failure to obtain the required licenses, other than to suggest that certain politicians and expoliticians pulled strings. John testified that his experiences with Sitzmark Shuttle System will be the subject of a movie to be called "Sick Transit Transit."↩
3. John testified that he chose to pursue aerial filmmaking at that time partly because his money making options were then circumscribed by the fact that his left hand had been put out of commission by a Nevada County sheriff's deputy who was later found to be a psychopath.↩
4. THE COURT: Now, you say the Weather Service pays for such films. Can you tell us how much? THE WITNESS: I have no idea. A film is only worth what somebody will pay for it. If someone wanted to offer a dollar, that is all it is worth. If someone wanted to offer $100,000 it is worth that.↩
5. John testified concerning an aborted attempt to film the route traveled by early Nordic people, saying that had the film been made, "[a]lmost anyone would take a thing like that, because it took so long to do.↩
6. Petitioners reported that Sitzmark Productions had expenses of $32,701 and gross receipts of $130. Sitzmark Shuttle gross receipts.↩
7. Section 183(a) through (c) provides as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. ↩
8. Section 162(a) provides in pertinent part: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
9. Section 212(1) and (2) provides: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income * * *↩
10. John offered no plausible explanation of his failure to obtain a license for Sitzmark Shuttle System, and he failed to complete any of the many films begun by Sitzmark Productions. ↩
11. In their 1976 return petitioners included the following statement: SITZMARK SHUTTLE SYSTEM has now completed its originally intended purpose, which was to enable a comprehensive study to be made of the transportation needs of the greater North Lake Tahoe region. It was not designed to make a profit, necessarily, as that was second to the need for knowledge. The Shuttle System will now be abandoned, and the knowledge put to use. A report of findings has been compiled. * * *↩